```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


YOUNG SOON KIM and IL JOO KIM,      )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )
                                    )   No. 11 C 6931
TD AMERITRADE, INC,                 )
                                    )
          Defendant.                )
                                    )
                                    )
```

### MEMORANDUM OPINION AND ORDER

Plaintiffs Young Soon Kim and Il Joo Kim (the "Kims") filed a two-count complaint against defendant TD Ameritrade, Inc. in the Circuit Court of Cook County.  Both counts allege violations of Illinois Uniform Commercial Code ("Illinois UCC"), Articles 3 and 4.  Count I alleges conversion of an instrument under 810 ILCS 5/3-420, and Count II alleges improper charging of plaintiffs' account under 810 ILCS 5/4-401.  Defendant removed the action to this court.  Defendant moves to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, defendant's motion is granted in part and denied in part.

I.

At the heart of the Kims' complaint are the actions of Peter Cho, who allegedly defrauded the Kims of more than $300,000.  The

Kims alleged that Cho held himself out as an expert in procuring foreclosed properties for investors, and that he convinced the plaintiffs to invest in a group of 200 two-flat homes with other investors, an investment that would require a capital contribution of around $550,000. Cho instructed the Kims to liquidate assets and to take a mortgage on their home in order to come up with the capital contribution. The Kims liquidated a mutual fund account for $123,217 and gave the funds to Cho, thinking that they were making an advance on the down payment for the real estate investment. The Kims also issued three checks to Cho, leaving the payee line blank as instructed by Cho, for amounts totaling $187,035.86. Cho did not make a down payment on a real estate investment.

Instead, Cho took the funds and opened a TD Ameritrade account in plaintiffs' names. The Kims claim that Cho never told them that he was opening the account. To open the account, Cho allegedly used an address that was different from the Kims' address, forged the signatures on the application, and included other inconsistent identifying information. The Kims claim that the forged signatures did not resemble the signature on the check used to open the account and that the address on the application also did not match the address on the check used to open the account. Cho was successful in opening the account notwithstanding language on the application stating that federal

law requires financial institutions to verify identifying information used to open a new account. TD Ameritrade issued checks and a debit card in plaintiffs' names to the address listed on the application.

Between September 2008 and March 2009, Cho allegedly used the funds in the account and almost depleted it by writing checks to himself and through online stock trades. Throughout this period, the Kims reportedly received no statements from TD Ameritrade, but they eventually learned of the account from their own bank in April 2009. Plaintiffs contacted TD Ameritrade and requested statements. The Kims then reported the fraud to TD Ameritrade and demanded that TD Ameritrade return their money. TD Ameritrade opened a fraud investigation but refused to return the money to the Kims.

II.

TD Ameritrade argues that it cannot be held liable to the Kims under Illinois UCC, Article 8, which protects securities intermediaries from most adverse claimants. 810 ILCS 5/8-115. However, defendant fails to effectively argue why § 8-115 applies in this case. While it is true that the plaintiffs have not alleged in their complaint precisely what kind of account Cho opened with defendant, the Kims have alleged that TD Ameritrade issued checks and a debit card to Cho. The Kims further allege

3

that Cho was able to use the checks to liquidate funds from the account. Article 8 defines a "securities intermediary" as (1) a clearing corporation, or (2) "a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others *and is acting in that capacity*." 810 ILCS 5/8-102(a)(14) (emphasis added). Defendant does not argue that it is a clearing corporation, and the requirement that defendant was acting in the capacity of a securities intermediary therefore applies. The fact that defendant issued checks and a debit card may not ultimately bar defendant's reliance on § 8-115, but plaintiffs have pled facts that, taken as true, raise an issue as to whether defendant was acting as a securities intermediary or performing bank-like functions when it allowed Cho to use plaintiffs' checks to open and fund the account or later to draw on the account.

Further, § 8-115 does not provide securities intermediaries with blanket immunity. As defendant recognizes, there are three statutory exceptions to the immunity provided by § 8-115. *See* 810 ILCS 5/8-115(1)-(3). Defendants skip an important step, however, by immediately jumping into their argument for why none of the three exceptions applies in this case. Article 8 provides that:

> "A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a

4

    broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset."

810 ILCS 5/8-115. There is, therefore, a threshold question of whether it "transferred a financial asset pursuant to an effective entitlement order" or acted "at the direction of its customer or principal." *Id.* "Entitlement order" and "effective entitlement order" are terms that are defined by statute. *See* 810 ILCS 5/8-102(a)(8) and 810 ILCS 5/8-107, respectively. An "effective entitlement order" must be made by "the appropriate person" or by someone "who has power under the law of agency." 810 ILCS 5/8-107. Neither party has discussed what impact, if any, these broader limitations have on whether TD Ameritrade is protected by § 8-115. At a minimum, Count II alleges sufficient facts to state a claim that would evade Article 8 immunity. In their complaint, the plaintiffs allege that Cho wrote checks to himself, drawing on the funds in the TD Ameritrade account. Plaintiffs claim that these charges were not properly payable. In other words, plaintiffs allege that the payments to Cho were not "effective entitlement orders." As such, I conclude that at this stage in the litigation, defendant has not shown that it is entitled to the protections of Article 8.

Defendant next argues that plaintiffs' claim for conversion under 810 ILCS 5/3-420 (Count I) fails to state a claim upon which relief can be granted. To state a claim for conversion under § 3-420, a complaint must allege "(1) plaintiff's ownership of, interest in, or possession of the check; (2) the forged or unauthorized endorsement on the check; and (3) defendant bank's unauthorized cashing of the check." *Nat'l Accident Ins. Underwriters, Inc. v. Citibank, F.S.B.*, 243 F. Supp. 2d 763, 764 (N.D. Ill. 2002). Defendant contendsthat under the language of § 3-420(a), plaintiffs cannot sue defendant for conversion. Indeed, § 3-420(a) states that "[a]n action for conversion of an instrument may not be brought by . . . the issuer or acceptor of the instrument . . . ." Comment 1 to § 3-420 states that there "is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer." *See also Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004). Because plaintiffs were the issuers of the checks, they cannot, according to the plain language of the statute, bring an action for conversion under § 3-420. Count I is accordingly dismissed.

As for defendant's arguments regarding Count II, none are persuasive. First, defendant argues that 810 ILCS 5/4-401 is inapplicable because it had no customer relationship with plaintiffs. Defendant cites no law and does not address the fact

that it acted as if the Kims were its customers.  The TD Ameritrade account was, after all, created in their names and funded using their money.  Defendant also contends that plaintiffs cannot show that defendant caused their losses because Cho would have traded away the funds if the bank had prevented him from writing checks or otherwise withdrawing funds from the TD Ameritrade account.  Defendant fails to support this entirely speculative argument or to address why Cho's trading would necessarily not constitute a "charge" under § 4-401.  Plaintiffs do not clearly exclude the money that was traded away from their Count II claims, though at later stages this distinction may need to be addressed.  Finally, defendant argues that plaintiffs' negligence substantially contributed to the forgeries.  However, defendant cites only to cases that were decided on summary judgment. *See In re Ostrom-Martin, Inc.*, 188 B.R. 245 (Bankr. C.D. Ill. 1995); *Streng Oldsmobile, Inc. v. Fleet Bank of New York*, 245 A.D.2d 1032, 667 N.Y.S.2d 160, 1997 N.Y. Slip Op. 11596 (1997).  Plaintiffs have stated a claim against Defendant in Count II and the issue of plaintiffs' negligence goes beyond the face of the complaint.  Defendant's motion to dismiss is therefore denied as to Count II.

 Plaintiffs purport to put forward two alternative theories of recovery in their response to defendant's motion to dismiss. First, plaintiffs argue that defendant violated its common law

duty to inquire into deposits that were not authorized by the Kims. Second, plaintiffs contend that the have a valid cause of action under the Illinois Fiduciary Obligations Act. Plaintffs cite to *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997), and *Daniels v. Bursey*, 313 F.Supp.2d 790, 803 (N.D. Ill. 2004), for the proposition that a plaintiff can assert new theories of recovery in a memorandum without amending her complaint. In *Albiero*, the judge spotted an equal protection claim in addition to the due process claim explicitly pled in the complaint. 122 F.3d at 419. In *Daniels*, the plaintiffs utilized their response briefs to identify the specific provisions of a statute named in the complaint. Here, plaintiffs argue that they are entitled to relief under two sources of law not named or referenced in their complaint, essentially adding two new counts to the complaint. Plaintiffs are free to amend their complaint to include claims under different sources of law, but they may not add additional counts to their complaint without actually amending the complaint.

### III.

In conclusion, Count I of plaintiffs' complaint is dismissed, but Count II remains.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 29, 2012